**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

R.S. (A MINOR BY AND THROUGH                                                        PLAINTIFFS
HIS NEXT FRIEND, GEORGIA SMITH) AND
GEORGIA SMITH, INDIVIDUALLY

V.                                                    CIVIL ACTION NO. 1:12-CV-00088-SA-DAS

STARKVILLE SCHOOL DISTRICT;
JAMES MITCHELL, INDIVIDUALLY;
CHRIS WALTERS, INDIVIDUALLY;
TATE FISCHER, INDIVIDUALLY;
KEITH FENNELL, INDIVIDUALLY;
SEAN MCDONNALL, INDIVIDUALLY                                                         DEFENDANTS

<u>**MEMORANDUM OPINION**</u>

Defendants have filed a Motion for Judgment on the Pleadings [42]. Additionally, the

Individual Defendants have filed a Motion to Dismiss based on qualified immunity [44]. Upon due

consideration of the motions, responses, rules, and authorities, the Court finds that Defendants'

Motion for Judgment on the Pleadings should be granted in part and denied in part, and that

Individual Defendants' Motion to Dismiss should be denied.

*FACTUAL AND PROCEDURAL BACKGROUND*

R.S., a Caucasian minor, suffers from SLD (Specific Learning Disability) and Irritable Bowel

Syndrome. While a student in the Starkville School District, Plaintiffs allege R.S. was bullied,

harassed, assaulted, and otherwise mistreated by both fellow students and Starkville High School

teachers and coaches because of his race and disability. Plaintiffs allege school personnel largely

ignored, and at times actively encouraged and participated in, the mistreatment of R.S.

1

Defendants request a judgment on the pleadings asserting Plaintiffs have not met their burden under Federal Rule of Civil Procedure 12(c). Plaintiffs' second amended complaint [28] alleges Defendants violated Plaintiffs' rights under the Equal Protection Clause and Substantive Due Process Clause of the Fourteenth Amendment, 42 U.S.C. §§ 1981, 1983, and 1985, First Amendment freedom of speech, Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and 42 U.S.C. § 12203. Plaintiffs' complaint also alleges that Defendants' conduct constitutes negligence under state law and common law infliction of emotional distress.

## APPLICABLE STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). The Court's inquiry on a motion for judgment on the pleadings is necessarily limited to the pleadings themselves. See Ark. River Co. v. U.S., 840 F.Supp. 1103, 1104 (N.D. Miss. 1993) ("A motion for judgment on the pleadings is a self-descriptive motion which aptly explains that the court's inquiry is strictly limited to the pleadings."). As with a Rule 12(b)(6) motion, the Court may treat a motion for judgment on the pleadings as one for summary judgment when "matters outside the pleadings are presented to and not excluded by the court . . ." FED. R. CIV. P. 12(d).

A Rule 12(c) motion is governed by the same standards as a Rule 12(b)(6) motion—that is, that the Court must determine upon a review of the pleadings whether the plaintiff has stated a valid claim for relief. Brown v. CitiMortgage, Inc., 472 F. App'x 302, 303 (5th Cir. 2012) (per curiam) (citing St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 440 n.8 (5th Cir. 2000)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868

(2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>, 129 S. Ct. 1937.

The Fifth Circuit has further explained that this standard requires that "factual allegations must be 'enough to raise a right to relief above the speculative level.'" <u>Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC</u>, 352 F. App'x 945, 950 (5th Cir. 2009) (per curiam) (quoting <u>Twombly</u>, 550 U.S. at 555, 127 S. Ct. 1955). In evaluating the validity of a plaintiff's claims, the Court "will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." <u>Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.</u>, 313 F.3d 305, 312–13 (5th Cir. 2002). However, the Court will not "accept as true conclusory allegations or unwarranted deductions of fact." <u>Id.</u> at 313; <u>Brown</u>, 472 F. App'x at 303.

*ANALYSIS AND DISCUSSION*

<u>42 U.S.C. § 1981</u>

The Court first addresses Plaintiffs' claim that Defendants violated 42 U.S.C. § 1981. In their motion, Defendants argue that Plaintiffs failed to plead facts sufficient to set forth a *prima facie* case under § 1981. Specifically, Defendants contend Plaintiffs failed to allege intentional discrimination by Defendants on the basis of race. They also argue Plaintiffs failed to allege discriminatory conduct based on any activity enumerated in § 1981. Plaintiffs fail to address or even reference the § 1981 claim in their response.

"Section 1981 does not provide a general cause of action for race discrimination. Rather, it prohibits intentional race discrimination with respect to certain enumerated activities." <u>Arguello v.</u>

Conoco, 330 F.3d 355, 358 (5th Cir. 2003). Section 1981(a) provides, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981.

Plaintiffs' complaint does not allege any facts that would allow the Court to reasonably infer Defendants discriminated against Plaintiffs with regard to an activity enumerated by § 1981. Plaintiffs generally allege in their complaint that R.S. was the victim of bullying based upon his "status as a white disabled person and a special education student." Plaintiffs additionally allege that, on separate occasions, two teachers not named as parties to this suit harassed R.S. because of his race. First, Plaintiffs allege a black teacher made "racial comments about R.S.'s skin color" during a class discussion. Second, Plaintiffs contend another black teacher "harassed R.S. during Black History Month programs." While Plaintiffs' complaint alleges many instances of racially motivated bullying and harassment by other students, it makes no other allegations of Defendants acting or failing to act because of his race. Whereas Plaintiffs have failed to allege facts sufficient to suggest that Defendants discriminated against R.S. with regard to any particular enumerated activity under § 1981, the Court finds that Plaintiffs have failed to state a claim under § 1981.

Fourteenth Amendment Equal Protection

As to Plaintiffs' Equal Protection claim, Defendants argue that Plaintiffs' complaint failed to identify any similarly situated person who was treated differently than R.S. Relying on Plyler v. Doe, Defendants maintain that by failing to identify such a person, Plaintiffs have failed to state a

4

valid claim for relief arising under the Fourteenth Amendment Equal Protection Clause. 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982) ("[A]ll persons similarly circumstanced shall be treated alike."). Plaintiffs argue in their response memorandum that they have stated a valid claim because all other students and football players were treated differently that R.S.

Plaintiffs' complaint, however, does not make any allegations regarding similarly situated persons treated differently by Defendants. In fact, Plaintiffs' allegations are solely limited to actions committed against R.S. without reference or comparison to any individual or group of individuals in similar circumstances who received different treatment. While Plaintiffs assert in their response to Defendants' motion that they will be able to prove through the discovery process that other students who complained of bullying and harassment saw their attackers reprimanded and punished, no such allegation, however vague, may be found in their complaint.

"Under federal law, the Equal Protection Clause essentially directs that all persons similarly situated be treated alike." Wheeler v. Miller, 168 F.3d 241, 252 (5th Cir. 1999). "To state an equal protection claim, ... [p]laintiffs must allege, *inter alia,* that similarly situated individuals have been treated differently." Yates v. Stalder, 217 F.3d 332, 334 (5th Cir. 2000). Plaintiffs did not allege that Defendants treated R.S. differently than any similarly situated individuals. Therefore, the Court finds that Plaintiffs failed to state a valid claim for a violation of Plaintiffs' rights under the Fourteenth Amendment Equal Protection Clause.

Fourteenth Amendment Substantive Due Process

Turning next to Plaintiffs' substantive due process claim, the Court is again placed in the position of reading between the lines of Plaintiffs' complaint. Though the Second Amended Complaint alleges only a violation of R.S.'s "right to safety at school," Plaintiffs in their response

5

memorandum argue that their substantive due process claim is based on a right to bodily integrity, that a special relationship existed between R.S. and Defendants, and that Defendants created a dangerous environment that ultimately led to the foreseeable violations of R.S.'s constitutional rights.

Essentially, all of Plaintiffs' allegations against Defendants may properly be classified as either the failure to prevent and/or the encouragement of harassing and bullying conduct toward R.S. by other students or the direct participation in bullying and harassing conduct toward R.S. by school personnel. The Court will first address Plaintiffs' claims in relation to harm R.S. allegedly suffered as a result of the actions of other students.

Defendants correctly argue that they were under no duty to protect R.S. from violence perpetrated by third parties. The Supreme Court has long held that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Deshaney v. Winnebago Cnty. Dept. of Social Svcs, 489 U.S. 189, 197, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989). In Deshaney, the Supreme Court recognized a limited exception to their holding where a state creates a special relationship with a particular citizen by taking that person into state custody against his will. 489 U.S. at 199-200, 109 S. Ct. 998. In their response, Plaintiffs attempt to fit within this exception by arguing that R.S.'s learning disability and/or time spent in "In School Suspension" (ISS) created a special relationship with Defendants.

The Fifth Circuit has held in at least three separate *en banc* opinions that the special relationship exception does not apply in the public school context. See Doe v. Covington Cnty. Sch. Dist., 675 F.3d 849 (5th Cir. 2012) (en banc) (reaffirming that compulsory school attendance laws do not create special relationship between public schools and students); Doe v. Hillsboro Indep. Sch.

Dist., 113 F.3d 1412 (5th Cir. 1997) (en banc) (reasoning that, unlike the restraints of prisons and mental institutions, school custody is intermittent and therefore insufficient to create a special relationship between public schools and students); Walton v. Alexander, 44 F.3d 1297 (5th Cir. 1995) (en banc) (declining to apply the special relationship exception to a residential school). Based on the Fifth Circuit's clear precedent, the Court finds no legal support for Plaintiffs' claims that R.S.'s learning disability[1] and/or time spent in ISS[2] created a special relationship with Defendants.

Plaintiffs also argue in their response that Defendants knowingly created a dangerous environment that in turn led to the violation of R.S.'s constitutional right to bodily integrity by other students. As the Fifth Circuit recently reaffirmed, though, such a state-created danger theory has not been adopted by our Circuit. Covington, 675 F.3d at 864 ("Unlike many of our sister circuits, we have never explicitly adopted the state-created danger theory."); see also Kovacic v. Villarreal, 628 F.3d 209, 214 (5th Cir. 2010); Bustos v. Martini Club, Inc., 599 F.3d 458, 466 (5th Cir. 2010) (noting that the Fifth Circuit has not recognized the state-created danger theory of liability).

Even if the state-created danger theory were to apply, Plaintiffs here fail to allege facts sufficient to plead a violation of a constitutional right thereunder. The Fifth Circuit, though never

---

[1] Plaintiffs cite a single district court opinion in support of their argument that a student's learning disability may create a special relationship with a public school. See Teague ex rel. CRT v. Texas Indep. Sch. Dist., 386 F. Supp. 2d 893 (S.D. Tex 2005). However, the district court did not explain the circumstances in which a special relationship might exist between a school district and a special education student, and the Fifth Circuit has not extended the special relationship exception based on these facts. Therefore, the Court declines to extend the exception based solely on dicta from another district court.

[2] Plaintiffs cite no authority for the proposition that ISS fits within the meaning of custody as expressed in Deshaney and interpreted by the Fifth Circuit in Doe v. Hillsboro. Additionally, Plaintiffs fail to allege that R.S. was subject to any type of detention by Defendants in their complaint and raise the specific allegation that R.S. was placed in ISS for the first time in response to Defendants' motion. As such, the Court finds this argument without merit.

expressly adopting the theory, has outlined the required elements of such a claim. In order to state a claim for relief under the state-created danger theory, a plaintiff must allege "the defendants used their authority to create a dangerous environment for the plaintiff and that the defendants acted with deliberate indifference to the plight of the plaintiff." Covington, 675 F.3d at 865. To establish deliberate indifference in the context of state-created danger, the plaintiff must show "the environment created by the state actors [is] dangerous; they must know it is dangerous; and . . . they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur." Piotrowski v. City of Houston, 237 F.3d 567, 585 (5th Cir. 2001) (quoting Johnson v. Dallas Indep. Sch. Dist., 38 F.3d 198, 201 (5th Cir. 1994)).[3]

Plaintiffs failed to allege in their complaint that Defendants created any such dangerous environment. Instead, Plaintiffs allege that Defendants failed to protect R.S., failed to stop the bullying, and failed to prevent further harassment. Similar to the state actors in Deshaney, Plaintiffs have at most alleged Defendants stood by and did nothing to assist R.S. 489 U.S. at 203, 109 S. Ct. 998. They have not alleged any facts that would allow the Court to reasonably infer that Defendants used their authority to create a dangerous environment and, ultimately, the opportunity for Plaintiffs' harm.

Plaintiffs allege numerous additional facts in their response memorandum that do not appear in Plaintiffs' complaint, including several pages of specific allegations against each individually

_____

[3] The Court rejects Plaintiffs' contention that the standard for deliberate indifference articulated in Alton v. Texas A&M University applies here. 168 F.3d 196, 200 (5th Cir. 1999). The standard in Alton applies to determine whether a supervisory official may be liable for the acts of a subordinate. Id. (relying on Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443 (5th Cir. 1994)). Plaintiffs have not alleged the other students were subordinates of the Defendants or acting under color of state law. Thus, the Alton test is inapplicable.

named defendant.  Though a Rule 12(c) motion may be treated as one for summary judgment when matters outside the pleadings are presented to the Court, the Court declines to do so in this case and will not consider factual allegations outside the pleadings.  Pursuant to Local Rule 16(b)(3)(B), the Court stayed all matters in this case in response to the Individual Defendants' assertion of qualified immunity.  See Porter v. Valdez, 424 F.App'x 382, 386 (5th Cir. 2011) (explaining that when qualified immunity is raised at the pleading stage, the Court's analysis must be limited to the facts alleged in the complaint); Mitchell v. Forsyth, 472 U.S. 511, 512, 105 S. Ct. 2806, 2808, 86 L. Ed. 2d 411 (1985) ("[q]ualified immunity . . . is an *immunity from suit* rather than a mere defense to liability") (emphasis in original).  Therefore, the Court declines to broaden its review to matters outside the pleadings.

As to Plaintiffs' argument that Defendants' own bullying and harassing conduct toward R.S. violated his right to bodily integrity, the Court finds such conduct, as pled in Plaintiffs' complaint, to be insufficient to support Plaintiffs' substantive due process claim.  Plaintiffs' complaint sets forth ten allegations of bullying and harassing behavior toward R.S. by teachers and coaches.  Six of these allegations refer to statements made to R.S. by teachers not named to this suit.  Two of the allegations refer to statements made by Individual Defendants.[4]  The remaining allegations state that "[n]o coach had spoken to R.S. in ten (10) days" and that "[c]oaches and [t]eachers refer, in R.S. presence, to him as gay, SPED, 'pussy,' and other derogatory and harassing terms."  Nowhere in the complaint do Plaintiffs allege physical harm or any physical contact committed by Defendants against R.S.  Plaintiffs' allegations of direct bullying and harassing by Defendants do not give rise

_____

[4]"[Sean] McDonnell told the students R.S. 'tattled' on them." "[Tate] Fisher [sic] said R.S. needed someone to bully him."

to a constitutional claim. See Ellis v. Hargrove, 75 F. App'x 229, 230 (5th Cir. 2003); Acadia Ins. Co. v. Hinds Cnty. Sch. Dist., 2013 WL 2182799, *5 n.4 (S.D. Miss. May 20, 2013). For these reasons, Plaintiffs have failed to state a valid claim for relief under the Fourteenth Amendment Substantive Due Process Clause.

First Amendment Freedom of Speech

Defendants attack Plaintiffs' First Amendment claim on the basis that Plaintiffs failed to allege any speech curtailed by Defendants. In response, Plaintiffs direct the Court to the allegation in the complaint that R.S. was removed from the football team in retaliation for filing the original complaint. Plaintiffs also allege, for the first time, in their response that Defendants increased their bullying and harassment of R.S. after Georgia Smith filed a complaint with the Mississippi Department of Education. As previously stated, the Court is limited to a review of the pleadings in evaluating Defendants' motion and will only consider the allegations found within Plaintiffs' complaint.

Looking then to the complaint, the Court finds that Plaintiffs have stated a valid claim for First Amendment retaliation. "[T]o establish a First Amendment retaliation claim against an ordinary citizen, [plaintiffs] must show that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct. Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002). The Court notes that Plaintiffs' burden to overcome a Rule 12(c) motion is not the same as that required by a Rule 56 motion for summary

judgment.  At this stage of litigation, Plaintiffs must have pled "only enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 547, 127 S. Ct. 1955.[5]

Plaintiffs' filing of the original complaint is clearly constitutionally protected activity under the First Amendment right to petition. U.S. CONST. AMEND. I; Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition.").  Further, Plaintiffs support their claim by alleging that R.S. had been a member of the football team during the previous two school years and that he was removed twelve days after the original complaint was filed.  The Fifth Circuit has previously found close timing between a plaintiff's exercise of protected activity and the adverse action sufficient to sustain an inference of liability for retaliation.  See, e.g., Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999) (A prisoner may establish a prima facie case of retaliation under § 1983 by "alleg[ing] a chronology of events from which retaliation may plausibly be inferred."); Evans v. City of Houston, 246 F.3d 344, 354 (5th Cir. 2001) (citing with approval Garrett v. Constar, Inc., CIV. A. 397-CV-2575R, 1999 WL 354239 (N.D. Tex. May 25, 1999) (finding plaintiff made a prima facie showing of Title VII retaliation where the adverse employment action occurred four months after the protected activity)).  Viewing these facts in the light most favorable

---

[5] The Court is also cognizant of Plaintiffs' failure to specifically name the Individual Defendants in their allegations of retaliation.  While Plaintiffs would be required to offer evidence establishing the specific acts committed by each individually named defendant in order to survive a motion for summary judgment, their burden to survive Defendants' Motion for Judgment on the Pleadings is much lower.  Plaintiffs allege that James Mitchell, Tate Fischer, and Chris Walters were football coaches at Starkville High School and that Keith Fennell and Sean McDonnell were the principal and assistant principal.  Whereas coaches and administrators would likely have the authority to remove students from a school sports team, the Court finds Plaintiffs' retaliation claim to be facially plausible as against each Individual Defendant. Whether Plaintiff can establish such specific proof as will be required to prevail against Defendants is a separate question that must be addressed at a later stage of litigation.

to Plaintiffs, the Court finds that Plaintiffs have stated a plausible claim for relief and that Defendants' Motion for Judgment on the Pleadings must be denied as to the First Amendment claim.

<u>42 U.S.C. § 1985</u>

The Court next looks to Plaintiffs' conspiracy claim under 42 U.S.C. § 1985. Defendants contend Plaintiffs failed to allege any underlying violation of constitutional rights. "Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates. The primary question . . . , therefore, is whether a person['s] injur[y]... deprive[s] [him] of 'the equal protection of the laws, or of equal privileges and immunities under the laws' within the meaning of § 1985(3)." <u>Great Am. Fed. Sav. & Loan Ass'n v. Novotny</u>, 442 U.S. 366, 372, 99 S. Ct. 2345, 60 L. Ed. 2d 957 (1979).

Defendants also argue that violations of due process cannot serve as the basis for a § 1985 claim and that Plaintiffs cannot state a *prima facie* case due to the applicability of the intracorporate conspiracy doctrine. The Fifth Circuit has long held that "a school board and its employees constitute a single legal entity which is incapable of conspiring with itself for the purposes of § 1985(3)." <u>Hilliard v. Ferguson</u>, 30 F.3d 649, 653 (5th Cir. 1994). Plaintiffs in their complaint allege that each of the Individual Defendants was employed at all relevant times by Starkville High School. Therefore, the Court finds that Plaintiffs have failed to state a valid claim for a violation of § 1985.

<u>Individual Defendants' Qualified Immunity Defense</u>

Individual Defendants, in addition to adopting and incorporating all arguments asserted by the School District in their joint motion for judgment on the pleadings, filed a separate motion arguing that the doctrine of qualified immunity requires the dismissal of four of Plaintiffs' claims as to them individually. Specifically, Individual Defendants argue Plaintiffs failed to sufficiently

and properly allege a violation of a clearly established constitutional right as required to sustain their Equal Protection, Substantive Due Process, First Amendment, and § 1985 claims.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (internal quotations omitted). "[Q]ualified immunity is an immunity from suit rather than a mere defense to liability." Id. (internal quotations omitted). Once a government official asserts qualified immunity, it is the plaintiff's burden to prove that he is not entitled to it. Michalik v. Hermann, 422 F.3d 252, 258 (5th Cir. 2005).

In evaluating qualified immunity, the Court employs a two-step process. The Court must determine whether the plaintiff has alleged a violation of a clearly established constitutional right and whether the government official's conduct was objectively reasonable under the law at the time of the incident. Id. at 257-58. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, --- U.S. ---, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012) (internal quotations omitted). Further, "[i]f qualified immunity is raised in a motion to dismiss, 'it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness.'" Senu–Oke v. Jackson State Univ., 283 F. App'x 236, 239 (5th Cir. 2008) (quoting Behrens v. Pelletier, 516 U.S. 299, 309, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996)). In conducting this analysis, the Court may address these issues in any order according to its sound discretion and in light of the circumstances of the case at hand. Pearson, 555 U.S. at 236, 129 S. Ct. 808.

Based upon the Court's findings that Plaintiffs failed to state a plausible claim for relief as to their claims under the Equal Protection Clause, Substantive Due Process Clause, and § 1985, the Court finds the question of Individual Defendants' qualified immunity resolved as to these claims. See Whitley v. Hanna, 2013 WL 4029134 (5th Cir. Aug. 8, 2013) (holding that a finding of failure to state a claim also resolves the question of qualified immunity raised in a motion to dismiss) (citing Lytle v. Bexar Cnty., Tex., 560 F.3d 404, 410 (5th Cir. 2009)).

As to Plaintiffs' First Amendment claim, the law has long been clearly established that government officials cannot retaliate against ordinary citizens for exercising their First Amendment rights. As early as 1996, the Fifth Circuit recognized a cause of action for First Amendment retaliation against an ordinary citizen. Rolf v. City of San Antonio, 77 F.3d 823, 827-28 (5th Cir. 1996). In 2002, the Fifth Circuit specifically endorsed the standard used by other circuits to determine when a plaintiff has established a claim for First Amendment retaliation in cases where there is no employment or other contractual relationship between the plaintiffs and the government. Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002). Two years later (and eight years before the Individual Defendants' alleged conduct), the Fifth Circuit clarified that ordinary citizen First Amendment retaliation claims are not subject to the public concern requirement applicable to claims brought by public employees. Kinney v. Weaver, 367 F.3d 337, 358 (5th Cir. 2004) ("Because the government has no legitimate interest in denying a benefit to 'ordinary citizens' on account of their speech on matters of public concern, there is no interest balancing involved in the First Amendment analysis for 'ordinary citizen' cases.").

Based on the Fifth Circuit's clear jurisprudence, the Court finds the law prohibiting retaliation by government actors for the exercise of ordinary citizens' First Amendment rights to

have been so clearly established in 2012, that any reasonable official would have understood that removing R.S. from the football team in retaliation for the filing of the original complaint would violate the law. Therefore, taking the allegations of the complaint as true, the Court finds Plaintiffs' complaint alleges conduct by Individual Defendants that was objectively unreasonable in light of the clearly established law at the time, and as such, Individual Defendants are not entitled to qualified immunity at this point in the proceedings as to Plaintiffs' First Amendment retaliation claim.[6]

## Municipal Liability under § 1983

Returning to Defendants' joint motion, Defendants contend that the School District cannot be liable for Plaintiffs' Equal Protection, Substantive Due Process, or First Amendment claims because Plaintiffs' failed to allege their injuries were caused by any official policy or custom. It is well settled law that municipal entities may be subject to liability under § 1983. Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). However, the doctrine of respondeat superior cannot serve as the basis for such liability. Id. at 691, 98 S. Ct. 2018 (". . . Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor . . . ") (emphasis in original).

In order to succeed then, a plaintiff must be able to show that his harm was caused by a violation of a constitutional right and that the municipal entity is itself responsible for the violation.

---

[6] Defendants argue, without citing to any supporting authority, that they are entitled to the dismissal of all claims against them in their individual capacities because Plaintiffs only alleged actions committed in their official capacities. The Court finds this argument without merit and inappropriate for a 12(c) motion.

Pembaur v. City of Cincinnati, 475 U.S. 469, 470, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, ---- U.S. ----, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011).

As the Court has determined that Plaintiffs have not stated valid claims for violations of the Equal Protection Clause and the Substantive Due Process Clause, the School District cannot be liable as to those claims. Further, Plaintiffs allege only that Defendants failed to enforce the School District's policies with regard to R.S. Plaintiffs do not allege that Defendants acted, or failed to act, in accordance with any official policy to ignore or encourage bullying or that Defendants' conduct was the result of a pervasive custom or practice of the School District or that any Individual Defendant acted as a final policymaker. Plaintiffs' allegations of isolated events are insufficient to allow the Court to reasonably infer that the driving force behind them was action attributable to the School District. As such, Plaintiffs merely alleged wrongdoing by School District employees that cannot serve as the basis for imposing liability on the School District.

### ADA, § 504, and § 12203 Claims

In addition to Plaintiffs' constitutional claims, Plaintiffs allege Defendants intentionally discriminated against R.S. because of his learning disability in violation of § 504 of the Rehabilitation Act of 1973[7] and Title II of the Americans with Disabilities Act,[8] that Defendants

_____

[7] "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794.

[8] "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

created a hostile learning environment in violation of the ADA, and that Defendants retaliated against R.S. in violation of 42 U.S.C. § 12203.[9] Defendants attack Plaintiffs' claims by arguing that they cannot be raised under § 1983, that individual liability is not available under the Rehabilitation Act or the ADA, that Plaintiffs' claims are barred by *res judicata*, and that Plaintiffs failed to plead sufficient facts to state a claim for retaliation.

The Fifth Circuit has clearly held that the Rehabilitation Act provides only for suit against a program or activity receiving federal financial assistance and therefore does not provide for individual liability. Lollar v. Baker, 196 F.3d 603, 609 (5th Cir. 1999) (citing 29 U.S.C. § 794). Further, the Fifth Circuit held that such legislative acts, which expressly provide "comprehensive enforcement and remedial measures for violations of [their] provisions," preclude plaintiffs from seeking to enforce their rights against defendants in their individual capacities under § 1983. Id. at 610.

In rejecting the use of § 1983 for Rehabilitation Act claims against individuals, the Fifth Circuit noted with approval two cases from other circuits. Both of these cases held that the comprehensive remedial framework of the ADA bars claims against individuals under § 1983. Id. (citing Holbrook v. City of Alpharetta, 112 F.3d 1522, 1531 (11th Cir. 1997); Alsbrook v. City of Maumelle, 184 F.3d 999, 1010-11 (8th Cir. 1999)); see also D.A. v. Houston Indep. Sch. Dist., 629 F.3d 450, 456-57 (5th Cir. 2010) (holding that ADA and § 504 claims cannot be brought under § 1983). The Court therefore finds Plaintiffs' claims under the ADA and § 504 must be dismissed against the Individual Defendants.

---

[9] "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203.

The Fifth Circuit has not addressed whether § 12203 provides for personal liability for individuals. However, the Eleventh Circuit has specifically found individual liability to be available in the limited context of Title II of the ADA. Higdon v. Jackson, 393 F.3d 1211, 1218 (11th Cir. 2004) (citing Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1165-1180 (11th Cir. 2003)); but see Albra v. Advan, Inc., 490 F.3d 826, 830-834 (11th Cir. 2007) (declining to extend individual liability for violations of § 12203 in the context of Title I of the ADA). District courts in other circuits have split on the issue. See Datto v. Harrison, 664 F. Supp. 2d 472, 491-92 (E.D. Pa. 2009) (finding "individual liability may be imposed for retaliation claims under the ADA involving either public entities or public accommodations"); P.N. v. Greco, 282 F. Supp. 2d 221, 243-44 (D. N.J. 2003) (finding that individual liability is not available because the ADA itself does not provide for individual liability for retaliation).

The Court need not determine this issue, however, as Plaintiffs have failed to allege sufficient facts to state a valid claim for relief for retaliation under the ADA. In their complaint, Plaintiffs allege that Defendants retaliated against R.S. by removing him from the football team after the original complaint was filed. Though they now argue in response to Defendants' motion that Defendants also increased their bullying and harassment of R.S. after Plaintiffs filed a complaint with the Mississippi Department of Education, no such allegations are found in Plaintiffs' complaint and, as the Court has stated, will not be considered.

Section 12203(a) provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." Plaintiffs have not alleged that Defendants retaliated

18

against them because of the numerous informal complaints and reports made to school personnel regarding the bullying and harassment of R.S. Rather, Plaintiffs specifically claim Defendants removed R.S. from the football team in retaliation for Plaintiffs' filing of the original complaint, which did not include any claims under the ADA or the Rehabilitation Act. As such, the Court finds Plaintiffs have failed to plead sufficient facts to raise their claim for retaliation under § 12203 above the speculative level and such claim must be dismissed as to all Defendants.

As to Plaintiffs' claims of disability discrimination against the School District, Plaintiffs' claims are not barred by the doctrine of *res judicata* as Defendants contend. Defendants argue that Plaintiffs' claims under the ADA and § 504 are essentially the same as those made by Plaintiffs in a complaint to the Mississippi Department of Education under the IDEA.[10] Defendants cite D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist. in support of their argument that Plaintiffs' claims are redundant and should be precluded. 629 F.3d 450, 454 (5th Cir. 2010). In that case, the Fifth Circuit held that issue preclusion applies "where the legal standards underlying such claims are not significantly different," and "[t]hus, the resolution of an IDEA claim in the school district's favor will frequently preclude parents' resort to redundant claims under § 504 and ADA." Id. at 455. In response, Plaintiffs broadly argue that the ADA and § 504 encompass more than the School District's alleged failure to comply with IEPs.

---

[10] In a footnote to their complaint, Plaintiffs allege the School District has been found in violation of R.S.'s Individualized Education Plans (IEPs) by the Mississippi Department of Education. Plaintiffs maintain this allegation in their response memorandum. Defendants contest this allegation and urge the Court to consider a letter from the Mississippi Department of Education as a part of the pleadings due to Plaintiffs' reference to the MDE investigation in the complaint. In the alternative, Defendants urge the Court to convert this single issue to a summary judgment review. The Court finds Defendants' *res judicata* argument to be unsupported by case law regardless of the MDE's findings and therefore declines to consider Defendants' Exhibit 1.

The Fifth Circuit has not held that all ADA and § 504 claims are precluded by the resolution of IDEA claims. Rather, in Houston, the issue before the Court was "what remedies remain under § 504 and the ADA for children whose parents are dissatisfied with the school's determinations under IDEA." Id. at 454. Also, the plaintiffs' claims were based on "mere disagreement with the correctness of the educational services rendered" rather than some intentional discrimination based on disability. Id. at 455. In contrast, Plaintiffs' complaint alleges, as an alternative theory to their retaliation claims, that R.S. was removed from the football team because of his learning disability. This type of alleged intentional discrimination because of a disability is entirely different from the disagreements over compliance with the IDEA that the Court in Houston contemplated. Id.

Though Plaintiffs' complaint mentions R.S.'s IEPs in passing, the Court finds Plaintiffs' claims under the ADA and § 504 are not precluded by Plaintiffs' IDEA claims because the complaint alleges intentional discrimination and not merely the failure to follow IEPs. Therefore, the Court denies Defendants' motion as to Plaintiffs' intentional discrimination claims under the ADA and § 504.

Turning lastly to Plaintiffs' claim that Defendants are liable for creating a hostile learning environment under the ADA, the Fifth Circuit has not adopted such a theory of liability. In Flowers v. S. Reg'l Physician Servs. Inc., the Fifth Circuit recognized a cause of action under the ADA for disability-based harassment based upon a hostile work environment theory. 247 F.3d 229, 232-35 (5th Cir. 2001). However, the Court's holding was limited to an employment context and was grounded in similarities between the ADA and Title VII. Id. at 234 ("Not only are Title VII and the ADA similar in their language, they are also alike in their purposes and remedial structures. Both Title VII and the ADA are aimed at the same evil—employment discrimination against individuals

of certain classes.") The Fifth Circuit has not extended this type of claim, or even addressed whether such a cause of action might be available, to a student in a public school setting. As such, the Court finds that Plaintiffs have failed to state a valid claim for relief under the ADA for creation of a hostile learning environment.

State Law Claims and the MTCA

Plaintiffs' complaint also alleges that Defendants' conduct constitutes negligence under state law and that Defendants are liable under Mississippi common law for the infliction of emotional distress. Defendants contend these claims are barred by three provisions of the Mississippi Tort Claims Act. First, Defendants argue the MTCA expressly reserves absolute sovereign immunity for claims arising from the performance of discretionary functions by public officials within their official duties. MISS. CODE ANN. § 11-46-9(1)(d). Second, Defendants argue that the MTCA precludes liability for actions arising out of the exercise of discretion in the purchase of equipment, construction or maintenance of facilities, hiring of personnel, and general provision of adequate government services. MISS. CODE ANN. § 11-46-9(a). Third, Defendants argue there is no liability under the MTCA arising out of legislative or judicial action or inaction or for administrative action or inaction of a legislative or judicial nature. MISS. CODE ANN. § 11-46-9(a).

Pursuant to Mississippi Code § 11-46-3 and § 11-46-1, school districts are political subdivisions and governmental entities of the state and are generally immune from negligence actions. Lang v. Bay St. Louis/Waveland Sch. Dist., 764 So. 2d 1234, 1236 (Miss. 1999). While Mississippi Code § 11-46-5 "waives immunity for actions for money damages based upon the torts of governmental entities and their employees..., [t]his waiver is expressly subject to the exclusions or exemptions enumerated in Section 11–46–9." Id. (internal citations omitted).

Section 11-46-9(1)(d) of the Mississippi Codes states that "[a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." Under Mississippi law, "[a] duty is discretionary when it is not imposed by law and depends upon the judgment or choice of the government entity or its employee." Miss. Transp. Comm'n v. Montgomery, 80 So. 3d 789, 795 (Miss. 2012). However, "[a] duty is ministerial if it is positively imposed by law and required to be performed at a specific time and place, removing an officer's or entity's choice or judgment." Id.

The Mississippi Supreme Court has further explained that courts are to utilize a two-part public-function test in order to determine whether governmental conduct is discretionary in nature. Id. This two-part test requires the Court to first determine "whether the activity in question involved an element of choice or judgment." Id. If so, the Court must then determine "whether that choice or judgment involved social, economic, or political-policy considerations." Id.

Defendants contend their actions, as alleged in Plaintiffs' complaint, were discretionary and entitle them to immunity against Plaintiffs' state law claims because the manner in which schools address bullying and discipline students is determined on a case-by-case basis and is the necessary result of many fact specific judgment calls. Additionally, Defendants assert that bullying is socially and morally unacceptable, so actions and decisions relating to such behavior necessarily implicate social policy. Though Plaintiffs do not specifically address the MTCA or the public-function test in their response, their complaint alleges the Individual Defendants are not entitled to immunity under the MTCA because their conduct constituted willful and intentional misconduct. They also

argue in their response that Defendants' acts were not discretionary, that Defendants owed R.S. a duty of ordinary care, and that Defendants had a statutory duty under Mississippi Code § 37-9-69 to maintain appropriate control and discipline of students.

Plaintiffs cite T.K. v. Simpson Cnty. Sch. Dist., in support of their argument that Defendants had a duty of ordinary care to protect R.S. from harm. 846 So. 2d 312, 319 (Miss. Ct. App. 2003). In stating the rule that schools are required to exercise ordinary care to protect students, Simpson relied upon L.W. v. McComb Separate Municipal Sch. Dist., a case that has been expressly overruled by the Mississippi Supreme Court. 754 So. 2d 1136, 1141 (Miss. 1999) (overruled by Montgomery, 80 So. 3d at 797.). The court in L.W. found that a school board might still be liable for conduct that would be discretionary under of § 11-46-9(1)(d) where a statutory duty also applied. Id. The court reasoned that the existence of an applicable statutory duty implicated the ordinary care standard required by § 11-46-9(1)(b) such that a defendant could only be immune under § 11-46-9(1)(d) if he acted with ordinary care. Id. at 1141-42. In other words, the court held that the ordinary care standard applied to § 11-46-9(1)(d) determinations of discretionary function immunity.

In Montgomery, the Mississippi Supreme Court expressly overruled this reasoning and held that the two-part public function test alone must be used to determine whether a governmental entity is entitled to discretionary function immunity under § 11-46-9(1)(d). 80 So. 3d at 797 ("To the extent L.W., Brewer, and Cargile may be read to condone an interplay between Section 11-46-9(1)(b) and Section 11-46-9(1)(d) to determine whether the discretionary conduct of the governmental entity is exempt from liability by applying the ordinary-care standard, these cases, and any other cases which stand for this proposition, are expressly overruled."). The Mississippi Court of Appeals has further explained that "[the] task is not to simply ask whether the [school] [d]istrict's

allegedly negligent activities fall within broad statutory duties. Instead, we employ the two-part public-function test." <u>J.S. v. Lamar Cnty. Sch. Dist.</u>, 94 So. 3d 1247, 1251 (Miss. Ct. App. 2012).

Accordingly, the Court must evaluate Defendants' alleged actions in light of the two-part public function test to determine whether Defendants are eligible for discretionary immunity under § 11-46-9(1)(d). The Court first addresses Defendants' alleged failure to stop or prevent other students from bullying R.S. Plaintiffs argue Defendants owed R.S. a duty to punish the students who bullied R.S. under Mississippi Code § 37-9-69. The Mississippi Supreme Court "has applied this statute only in a limited context, mainly in cases concerning the disorderly conduct of students, or intentional acts on the part of individuals . . ." <u>Covington Cnty. Sch. Dist. v. Magee</u>, 29 So. 3d 1, 5 (Miss. 2010). Indeed, the Mississippi Supreme Court has expressly held that the duty to hold students to strict account for disorderly conduct imposed by § 37-9-69 was ministerial rather than discretionary. <u>Lang</u>, 764 So. 2d at 1241.

Subsequent cases have upheld the finding in <u>Lang</u>, focusing on whether a defendant's alleged actions are subject to the ministerial duty of § 37-9-69. <u>See</u> <u>J.S. v. Lamar Cnty. Sch. Dist.</u>, 94 So. 3d 1247, 1252 (Miss. Ct. App. 2012); <u>Q.A., ex. rel. D.W. v. Pearl Public Sch. Dist.</u>, 87 So. 3d 1073, 1079 (Miss. Ct. App. 2011); <u>Dixon ex rel. Dixon v. Alcorn Cnty. Sch. Dist.</u>, 2012 WL 273079, *4 (N.D. Miss. Jan. 30, 2012). Whereas Plaintiffs' complaint alleges Defendants negligently failed to enforce School District policies, failed to respond to complaints of other students bullying R.S., and failed to discipline students who bullied R.S., the Court finds § 37-9-69 properly applies. As such, the Court finds these acts to be ministerial in nature and thus, to the extent Plaintiffs' negligence

claims are based on such conduct, they are not barred by the discretionary immunity of § 11-46-9(1)(d) or § 11-46-9(a).[11]

However, Plaintiffs also allege Defendants' failed to implement policies to prevent further bullying. Defendants contend that decisions relating to the implementation of school district anti-bullying policies are discretionary in that they require judgment on the part of school boards and involve social policy due to the social and moral unacceptability of bullying. Additionally, Defendants argue that the adoption and enforcement of school district policies is legislative and judicial in nature and the Defendants are therefore immune under § 11-46-9(a). Plaintiffs do not address Defendants arguments' or their allegations that Defendants failed to implement appropriate policies in their response. Though Defendants' alleged direct failure to discipline students for disorderly conduct implicates the ministerial duties of § 37-9-69, no such duty arises from their alleged failure to implement policies. Rather, the Court finds that Plaintiffs' negligence claims, insomuch as they are based on a failure to implement policies, are barred by the MTCA under both § 11-46-9(1)(d) and § 11-46-9(a).

Plaintiffs' complaint further alleges that Defendants are liable for the infliction of emotional distress based *inter alia* on Defendants' intentional and/or willful actions and/or inactions. The Mississippi Supreme Court has held that torts which require proof of malice as an essential element are excluded from the MTCA under § 11–46–5(2). See Zumwalt v. Jones Cnty. Bd. of Supervisors, 19 So. 3d 672, 688–89 (Miss. 2009). Section 11-46-5(2) states that "an employee shall not be

---

[11] The Court's finding that Defendants' alleged conduct was ministerial rather than discretionary does not remove the absolute personal immunity afforded the Individual Defendants for actions committed within the course and scope of employment. Graves v. Hinds Cnty., Miss., 2012 WL 2574494 (S.D. Miss. July 2, 2012) (citing MISS. CODE § 11-46-7(2)).

considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations."

The Mississippi Court of Appeals has articulated that intentional infliction of emotional distress may be outside the scope of the MTCA. Weible v. Univ. of S. Miss., 89 So. 3d 51, 64-65 (Miss. Ct. App. 2011), reh'g denied (Feb. 7, 2012), cert. denied, 94 So. 3d 290 (Miss. 2012) (relying on Summers ex rel. Dawson v. St. Andrew's Episcopal Sch., Inc., 759 So. 2d 1203, 1211 (Miss.2000) (finding intentional infliction of emotional distress may be predicated on behavior that is malicious)). Accordingly, the Court finds that to the extent Plaintiffs' claim for intentional infliction of emotional distress is based on malicious conduct, it is not barred by the MTCA as to the Individual Defendants and immunity is not waived as to the School District.

In their response, Plaintiffs contend that their complaint asserted valid claims for civil conspiracy and negligent supervision. "Under Mississippi law, '[a] conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully.'" Gallagher Bassett Servs., Inc. v. Jeffcoat, 887 So. 2d 777, 786 (Miss. 2004) (quoting Levens v. Campbell, 733 So. 2d 753, 761 (Miss. 1999)). The Mississippi Supreme Court further held that "[i]t is elementary that a conspiracy requires an agreement between the co-conspirators." Id. Plaintiffs allege no facts whatsoever in support of their allegation that Defendants conspired to deprive R.S. of his constitutional rights. Similarly, Plaintiffs' complaint alleges no facts supporting a claim for negligent supervision or that would give Defendants notice that Plaintiffs were seeking to recover

on such a claim. Accordingly, the Court finds that Plaintiffs have failed to state valid claims for civil conspiracy and negligent supervision and that these claims cannot survive Defendants' motion.

<u>Georgia Smith's Claims Individually</u>

Finally, the Court addresses Defendants' argument that Georgia Smith should be dismissed as a plaintiff in her individual capacity. Plaintiffs' complaint names Georgia Smith as both a representative and next friend of R.S. and as an individual plaintiff. The complaint does not specify which claims are brought against Defendants by Georgia Smith on behalf of R.S. and which are brought on behalf of herself. However, the complaint specifically alleges that Georgia Smith lodged multiple complaints on behalf of R.S. and that she suffered "severe stress and anxiety, coupled with loss of sleep and worry about her son" as a result of "the stress caused by these matters." Defendants argue that Georgia Smith is not a proper party as an individual plaintiff because she cannot assert any legally cognizable claims against Defendants. Specifically, Defendants argue that any state law claims against them are barred by the MTCA and that the injury alleged by Georgia Smith is insufficient to sustain a claim for infliction of emotional distress.

In response, Plaintiffs argue that Defendants are liable for Georgia Smith's state law claims for infliction of emotional distress because "[e]very claim of R.S. has likewise been shared by his mother in the pain, suffering, and emotional distress." For the same reasons that R.S.'s claim for intentional infliction of emotional distress is barred against the School District but not against the Individual Defendants, the MTCA likewise retains immunity for the School District but provides no such protection for the Individual Defendants against Georgia Smith's claim of intentional infliction of emotional distress. Similarly, the Court finds that Georgia Smith's claim for negligent infliction of emotional distress is barred by the MTCA only to the extent that her claim is based

upon Defendants' alleged failure to implement policies but not to the extent that her claim is based upon Defendants' alleged failure to hold students to strict account for disorderly conduct as required by § 37-9-69.

The Court further finds that Georgia Smith has pled sufficient facts to state valid claims for relief for infliction of emotional distress. Defendants argue that Georgia Smith's alleged loss of sleep and worry are insufficient to recover mental anguish damages for a claim for infliction of emotional distress. However, the Court's burden on a motion for judgment on the pleadings is not to decide the merits of a case but to determine whether a plaintiff has stated sufficient facts to raise her claim above the speculative level. Georgia Smith alleged that Defendants' negligent, grossly negligent, intentional and/or willful actions and/or inactions in addressing her many complaints caused her severe stress and anxiety. The Court finds Georgia Smith has stated a valid claim for relief.

*CONCLUSION*

For all the foregoing reasons, the Court finds Plaintiffs have stated valid claims against the School District for disability discrimination under the ADA and § 504 of the Rehabilitation Act and state law negligence claims based upon the failure to discipline and control students. The Court also finds Plaintiffs have stated valid claims against the Individual Defendants for First Amendment retaliation and intentional infliction of emotional distress. As such, Defendants' Motion for Judgment on the Pleadings [42] is DENIED as to these claims and GRANTED as to all other claims. Finally, the Court finds the Individual Defendants are not entitled to qualified immunity as to Plaintiffs' First Amendment retaliation claim at this stage and Individual Defendants' Motion to

Dismiss [44] is therefore DENIED as to that claim but rendered moot as to all other claims. A separate order to that effect shall issue this day.

SO ORDERED on this, the 19th day of September, 2013.

 /s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**